THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:21-CR-34 |
| | : (JUDGE MARIANI) |
| JAMES WILLIAMS, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION
### I. INTRODUCTION

On February 23, 2021, Defendant was charged in a six-count Indictment: two counts for possession with intent to distribute cocaine within 1000 feet of a school (one incident on March 28, 2018, and another incident on April 18, 2018); one count for possession with intent to distribute 500 grams and more of a substance containing a detectable amount of cocaine on May 3, 2018; and three related weapons violations. (Doc. 24.) Here the Court considers Defendant's "Motion to Suppress All Evidence Seized Pursuant to Unlawful Search Warrant" (Doc. 81). With the Motion, Defendant seeks to suppress evidence seized pursuant to the Application for a Search Warrant submitted by FBI Task Force Officer Christopher Shelly on May 2, 2018. (*Id.*) Because Defendant seeks suppression pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), (*see* Doc. 82 at 1), as a preliminary matter, the Court must determine whether Defendant demonstrates that he is entitled to a *Franks* Hearing.

The pending Motion is fully briefed (Docs. 82, 84, 85) and ripe for disposition. For the reasons that follow, the Court concludes that Defendant has not shown that he is entitled to a *Franks* Hearing.

## II. DISCUSSION

Defendant contends that evidence seized pursuant to the Search Warrant executed on May 3, 2018, must be suppressed because the supporting affidavit contained a statement regarding a controlled drug purchase made in March 2018 that was contradicted by a Supplemental Narrative. (Docs. 81, 82.) Defendant specifically alleges the following:

> In the Application for a Search Warrant, TFO Shelly states that during the first controlled purchase in March 2018:
>
>> Williams . . . met with CW#1 for a short duration, and an exchange took place. Williams then returned to his vehicle and left the area. Williams was then followed by law enforcement back to 105 Thornley Road, East Stroudsburg, PA. Investigators met with CW#1 who provided the cocaine that he/she just purchased from Williams. Sergeant Lemond conducted a field test on this substance which yielded a positive response for the presence of cocaine.
>
> (Exhibit A at 0124 ["Master Affidavit of Probable Cause in support of a Criminal Complaint and Search Warrant" ¶ 17 [Doc. 82 at 22]). However, in the Supplemental Narrative, TFO Shelly states that during the first controlled purchase in March 2018:
>
>> No exchange took place, but CHSI placed an order for cocaine . . . Williams exited his vehicle and put cocaine in CHS1 parked vehicle. CHS1 never went to the vehicle. Sgt Lemond retrieved the cocaine and put the $500.00 in vehicle for payment. Williams returned to Pocono Plaza at 7:00pm and went into CHS1's vehicle and took the identifiable US currency. Sgt Lemond observed this action.
>
> (See Exhibit B at bates-stamp WILLIAMS000003 [Doc. 82 at 30]).
>
> TFO Shelly states that the alleged first controlled purchase occurred in two completely different ways in his Supplemental Narrative as opposed to the affidavit he submitted in support of the search warrant application. (See

> Exhibit's A – B).  The fact that two completely different stories exist by the lead law enforcement agent on the case establishes a substantial preliminary showing of at least a reckless disregard for the truth.

(Doc. 82 at 4-5.)

The Government agrees that paragraph 17 of the Affidavit of Probable cause contains two incorrect statements:

> The affiant incorrectly stated that "Williams exited the white Nissan SUV and met with CW#1 for a short duration, and an exchange took place." The affidavit also incorrectly states, "Investigators met with CW#1 who provided the cocaine that he/she just purchased from Williams.["] These two statements admittedly did not happen.
>
> On the day in question, Williams actually exited his vehicle and put cocaine in the confidential source's parked vehicle, without exchanging the drugs directly with the source [sic]. *See*, Defense Exhibit "B." Law enforcement then retrieved the drugs that Williams left from the vehicle and left $500.00 in U.S. currency. *Id.* Williams then returned to the vehicle and retrieved the money left by law enforcement. *Id.*

(Doc. 84 at 8-9.)

The parties' disagreement concerns the legal implications of the incorrect statements contained in the May 2, 2018, Master Affidavit of Probable Cause.  Defendant maintains that the Master Affidavit's description of the March 2018 controlled purchase is necessary to the finding of probable cause in the Search Warrant because the Search Warrant would be insufficient without it.  (Doc. 82 at 5-6.)  On this basis, Defendant asserts that "[a] hearing must be scheduled to further develop testimony regarding the truthfulness of the contents of the search warrant application."  (*Id.* at 6.)  On the other hand, the Government contends that there is no intentional or reckless falsehood or omission here and, if the Court finds the

3

statements were reckless, they were not material because there "remains an overwhelming amount of evidence to support a finding of probable cause for the search warrant." (Doc. 84 at 9.)

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155–56. Thus, *Franks* established a two-part test to allow a defendant to overcome the presumption that an affidavit of probable cause supporting a search warrant is valid. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). First, a criminal defendant must make a "substantial preliminary showing" to overcome the presumption that the affidavit supporting the search warrant is valid. *Id.* Only if this initial showing is made is a defendant entitled to a *Franks* hearing. *Id.*

*Franks* elucidated the initial showing required:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer

4

> of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient . . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 171-72. To overcome the presumption of validity, a defendant must do more than construct a self-serving statement which refutes the warrant affidavit. *Id. at 171*. *United States v. Reed,* 726 F.2d 339, 342 (7th Cir.1984); *see also United States v. Strube*, No. CR.1:97-CR-0108-02, 1997 WL 33482969, at *3 (M.D. Pa. July 24, 1997) (supporting statements from the defendant and his wife self-serving).

In determining whether a statement was recklessly made,

> the rule is that an assertion is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. This definition provides two distinct ways in which conduct can be found reckless: either the affiant actually entertained serious doubts; or obvious reasons existed for him to do so, such that the finder of fact can infer a subjectively reckless state of mind.

*United States v. Brown*, 631 F.3d 638, 645 (3d Cir. 2011) (internal citations and quotation marks omitted). Similarly, omissions are made with reckless disregard for the truth "if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). An

5

omission or assertion is "material" when "probable cause does not exist under the corrected affidavit." *Yusuf*, 461 F.3d at 383.

In sum, a defendant must "allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and *must allege that the remaining information is insufficient to support a finding of probable cause.*" *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

In explaining the incorrect statement contained in paragraph 17 of the Master Affidavit, the Government states that "[t]he affiant confused this controlled purchase with another controlled purchase of drugs he observed on the same day, near the same time, in the same location, using the same confidential informant." (Doc. 84 at 8.) The Government argues that

> [t]here is obviously no intentional or reckless falsehood or omission here. The incident report detailing the events of the transaction was accurate. There is no reason for law enforcement to include false statements intentionally or recklessly in the affidavit when the actual incident implicates Williams in the drug transaction. Williams still arranged and participated in the sale of cocaine to the same informant on the date and location specified. Williams just did not hand the informant the drugs. He left them in the informant's car. At best, the inclusion of the two incorrect statements and omission of the actual facts of the controlled purchase is negligent on the part of the affiant. That is not enough to grant a *Franks* hearing to Williams.

(Doc. 84 at 9.)

Defendant does not directly address the Government's argument or factual assertions. Rather, he simply states that "[j]ust by the very act of a law enforcement officer

6

confusing two separate cases and using the incorrect set of facts in an application for a search warrant shows a reckless disregard for the truth." (Doc. 85 at 2.)

While the Court finds Defendant's response deficient and the Government's explanation for the misstatements plausible, the Court cannot characterize the inclusion of misinformation in the Master Affidavit as simply negligent when the assertions regarding the confusion of two controlled buys on the same day are not supported by citation to the record and the reason for and date of the "Supplemental Narrative" are unknown. Thus, the Court will turn to the issue of whether the misstatements are material to the finding of probable cause.

Regarding materiality, the Government's position is that if the referenced incorrect statements were removed from the Master Affidavit,

> there still remains an overwhelming amount of evidence to support a finding of probable cause for the search warrant. Law enforcement conducted two controlled purchases of cocaine, one on March 29, 2018, and one on April 18, 2018, from Williams. Law enforcement conducted surveillance of Williams at his residence prior to both controlled purchases of cocaine and followed Williams back to his residence following the March controlled purchase. In addition to the two controlled purchases of cocaine, the affidavit includes information from multiple other reliable confidential sources about Williams distributing cocaine. Based upon all of this additional information there is more than enough evidence in the affidavit to support a finding of probable cause.

(Doc. 84 at 9-10.)

Defendant criticizes information contained in paragraphs 20 and 21 of the Master Affidavit. (Doc. 85 at 3.) Criticism of paragraph 20 does not undermine materiality in that paragraph 20 goes generally to the reliability of CW#2. Further, the fact that the paragraph

7

"does not provide any direct affirmative knowledge of CW#2 witnessing criminal activity of Mr. Williams" (Doc. 85 at 3) is not material because the fact that CW#2 merely provided information that Defendant was "involved in *what appeared to be* drug trafficking" (Master Aff. ¶ 20 (Doc. 82 at 23 (emphasis added)) is at most supplemental to the allegations concerning Defendant's involvement in a controlled buy in April 2018, and information provided by CW#1, CW# 4, CW#5, and CW#6 about direct contact with drug dealing activity by Williams and/or a black male named "Dilly," a name used by Defendant. (*See, e.g.,* Master Aff. ¶¶ 13, 19, 23, 24, 25 (Doc. 82 at 20, 22, 24-25).)

Regarding paragraph 21, Defendant states that "CW#3 identified a Hispanic male" and he is a black male. (Doc. 85 at 3.) This information is not material to probable cause because, even if one confidential informant misidentified Defendant, he raises no issue concerning other confidential informants' (CW#1, CW#2, CW# 4, CW#5, CW#6) description of him. (*See, e.g.,* Master Aff. ¶¶ 19, 20, 22-25 (Doc. 82 at 22-25).)

Finally, Defendant's statement that "the first controlled purchase was material to the finding of probable cause" (Doc. 85 at 3) is simply a conclusory assertion which is not sufficient to establish materiality, particularly in the face of unrefuted information about Defendant's involvement in a controlled buy in April 2018 and information from numerous confidential informants about his drug activity.

In sum, if the Court were to assume *arguendo* that statements made in paragraph 17 showed "reckless disregard for the truth" and this material is set aside, a thorough review of the

8

Master Affidavit dated May 2, 2018, shows that "there remains sufficient content in the warrant affidavit to support a finding of probable cause [and] no hearing is required," *Franks*, 438 U.S. at 172. Because Defendant has not satisfied his burden of showing that he is entitled to a *Franks* Hearing to show that suppression of evidence is warranted based on incorrect information contained in the Search Warrant, his Motion to Suppress All Evidence Seized Pursuant to Unlawful Search Warrant (Doc. 81) is properly denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress All Evidence Seized Pursuant to Unlawful Search Warrant (Doc. 81) will be denied with the result that no *Franks* Hearing will be held in conjunction with the Evidentiary Hearing scheduled for June 21, 2021, and no evidence will be suppressed based on the incorrect information contained in the May 2, 2018, Search Warrant. A separate Order will be entered.

Robert D. Mariani
United States District Judge