THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **3:21-CR-34** |
| | : | **(JUDGE MARIANI)** |
| JAMES WILLIAMS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION
### I. INTRODUCTION

On February 23, 2021, Defendant was charged in a six-count Indictment: two counts

for possession with intent to distribute cocaine within 1000 feet of a school (one incident on

March 28, 2018, and another incident on April 18, 2018); one count for possession with

intent to distribute 500 grams and more of a substance containing a detectable amount of

cocaine on May 3, 2018; and three related weapons violations.  (Doc. 24.)  Here the Court

considers Defendant's "Motion to Suppress Statements of Defendant" (Doc. 45).  With the

Motion, Defendant challenges the admissibility of the statements he made to law

enforcement officers on May 3, 2018, based on his assertion that he did not knowingly,

voluntarily, and intelligently waive his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

(Doc. 45.)  He requests that the Court "hold a hearing to allow relevant facts to be

developed concerning the issues raised in this motion [and] . . . [t]hereafter . . . grant the . . .

motion and dismiss the Indictment with prejudice."  (Doc. 45 at 3.)  For the reasons that

follow, the Court concludes that a hearing is not needed to develop relevant facts and Defendant's Motion is properly denied.

## II. DISCUSSION

Defendant "challenges the admissibility of the statements that Mr. Williams made to law enforcement, asserting that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and the Fifth and Sixth Amendments to the United States Constitution in that they were not the result of a knowing, voluntary, and intelligent waiver of his right to remain silent and his right to counsel." (Doc. 51 at 2.)

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "[T]he privilege against self-incrimination protects individuals not only from legal compulsion to testify in a criminal courtroom but also from 'informal compulsion exerted by law-enforcement officers during in-custody questioning.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quoting *Miranda*, 384 U.S. at 461). To ensure a person's Fifth Amendment rights are protected, *Miranda* held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. As a procedural safeguard, a person being questioned must be issued the "*Miranda* warnings":

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence

2

against him, and that he has a right to the presence of an attorney, either retained or appointed.  The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

*Id.*

As explained in *United States v. Rought,* 11 F.4th 178 (3d Cir. 2021),

[a] waiver of the Miranda rights must be voluntary, knowing, and intelligent considering the totality of the circumstances. [*United States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir. 1989)] (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602). A waiver is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). In the voluntariness inquiry, "[a] suspect's background and experience, including prior dealings with the criminal justice system, should be taken into account." *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). A waiver is knowing and intelligent if "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Spring*, 479 U.S. at 573, 107 S.Ct. 851 (quoting *Burbine*, 475 U.S. at 421, 106 S.Ct. 1135*); see also Berghuis v. Thompkins,* 560 U.S. 370, 382-83, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). If the Government "shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis*, 560 U.S. at 384, 130
S.Ct. 2250.

*Rought, 11 F.4th at 187.*  In response to the argument that the defendant's waiver was

invalid "because he was not fully aware of the consequences if her were to waive his right to

counsel to any extent," *id.* at 192, *Rought* stated that

[a] waiver is generally held to be knowing and voluntary "if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). We long ago observed that "[i]t is not in the sense of shrewdness that *Miranda* speaks of 'intelligent' waiver but rather in the tenor that the individual must know of his available options before

deciding what he thinks best suits his particular situation." *Collins v. Brierly*, 492 F.2d 735, 739 (3d Cir. 1974) (en banc). A similar principle applies to the voluntariness inquiry. *See* [*Connecticut v. Barrett*, 479 U.S. 523, 530, 107 S.Ct. 828 (1987)] ("The fact that some might find Barrett's decision illogical is irrelevant, for we have never 'embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness.'" (footnote omitted) (quoting *Oregon v. Elstad*, 470 U.S. 298, 316, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985))).

*Rought*, 11 F.4th at 192–93.

The Third Circuit Court noted that it could readily conclude that the defendant's waiver was voluntary, knowing, and intelligent under the totality of the circumstances: the defendant had been read his *Miranda* rights; he signed a form acknowledging that he understood the rights; he consented to questioning; he had prior experience with the criminal justice system; and he "was surely aware that his statements to law enforcement could be used against him." *Id.* at 193.

The Government has provided video evidence of Defendant's initial interview conducted at the Stroud Area Regional Police Department.  (Gov't Ex. A.)  The Government reviews the video and concludes that "[i]t is clear from the recording that Williams made a knowing, voluntary, and intelligent waiver of his rights, free from coercion."  (Doc. 65 at 10.)

Looking at Defendant's background, the Government asserts that

according to a presentence report prepared by federal probation, he was 37 years old at the time of the interview and had completed the 10th grade. (3:18-cr-00153 Doc. 40) Williams was previously convicted of possession of cocaine in 2004, driving while intoxicated in 2008 and drug trafficking in 2015. *Id.* Although there is no indication of whether Williams was read his *Miranda* warnings in the past, it evidences at least a familiarity with the criminal justice system.

(Doc. 65 at 11.)

Concerning the details of the interrogation, the Government points to the following:

Williams was provided water immediately upon entry into the interview room. He was read his Miranda warnings, given time to read the waiver form and officers answered all the questions that he posed. Officers also repeatedly informed Williams that he did not have to speak with them, but if he did, he could stop at anytime and request a lawyer. Further, there is no evidence, nor is Williams alleging that he was under the influence of any controlled substance at the time of the interview.

(*Id.* at 11-12.)

Lastly, the Government avers that

a review of the conduct of law enforcement during the interview reveals that they did not use threats, deceitful tactics or any other form of intimidation throughout the entire interview process.

There is no evidence that at the time Williams signed the Miranda waiver form that he was confused or coerced by law enforcement.

(*Id.* at 12.)

Based on the video recording, Defendant provides the following rendition of the circumstances underpinning his Motion:

While Mr. Williams is being read his rights he is handcuffed, looking around the room, attempting to drink water, and visibly appears overwhelmed. Mr. Williams [is] asked if he understands his rights and he does not at first affirmatively state that he does, but shortly thereafter states "yes" during a back-and-forth conversation.

After obtaining the affirmative "yes" from Mr. Williams regarding his understanding of his rights, the law enforcement officer quickly states, "I have been read the statement of my rights and I understand what my rights are. At this time I am going to answer questions without a lawyer present." Mr. Williams

is presented with a consent form to sign. At this time, Mr. Williams is clearly
confused and the law enforcement officer states, "right now for us to have a
conversation you have to sign this." Still uncertain of his rights, Mr. Williams
asks "if I sign this, I can still request a lawyer?" Mr. Williams then signed the
consent form; however, the statement he made immediately prior indicates that
Mr. Williams did not make a knowing, voluntary, and intelligent waiver of his
rights.

(*Id.* at 4-5.)

The Court concludes that Defendant's characterization of his behavior is not

supported by the video recording.  Further, his recitation presents statements taken out of

context and omissions which are indicative of appropriate communication on both the

officers' and Defendant's parts.  The video at issue begins with Defendant entering an

interview room accompanied by an officer in street clothes with another officer, also in street

clothes, standing behind the desk. The Government identifies the first officer as FBI Task

Force Officer William Patton and the second as FBI Task Force Officer Christopher Shelly.

(Doc. 65 at 2).  Defendant is directed to sit in the chair at the desk and he does so without

hesitation.  After he sits down, the two officers sit next to one another on the other side of

the desk.

TFO Shelly first explains that they are being audio and video recorded for the benefit

of all.  He then informs Defendant "for us to have this conversation, you have to understand

your rights and you have to be willing to sign off to talk to us today." (Video Recording at

1:05.)  Shelly reads Defendant his *Miranda* rights.  When Shelly asks "Do you understand

what I just read to you?" Defendant immediately appears to nod his head and mumble

something.  Shelly asks "Is that a yes?" and Defendant says "yes" without hesitation.  At this point Shelly confirms that Defendant reads and writes English and reads Defendant the consent form.  The reading ends with Shelly stating the following: "I have read the statement of my rights and I understand what my rights are and at this time I am willing to answer questions without a lawyer present."  (Video Recording at 1:50-1:54.)

Shelly immediately hands Defendant the form, telling him that he needs to sign the form for them to be able to talk.  Shelly adds that Defendant does not have to answer questions if he does not want to and he can take his time to read the form.  Defendant takes the time to read the form himself and then asks if he can still request a lawyer if he signs the form.  Shelly and Patton both assure Defendant that he can request a lawyer at any time.  Shelly specifically tells him "you can stop and say 'I want a lawyer' and we're done."  (Video Recording at 2:25.)   At this point, Defendant reaches for the pen as Shelly tells him "it's not made in stone" but for them to start a dialog, "this is what has to happen . . . it protects you and protects us."  (Video Recording at 2:40.)  Defendant signs the form with no further questions.

Based on independent review of the video, the Court agrees with the Government's assessment of the events at issue.  *See supra* pp. 5-6.  Contrary to Defendant's characterization of the initial interaction between Defendant and the officers, there is no indication that Defendant "visibly appears overwhelmed" (Doc. 51 at 4).  His demeanor is calm and cooperative throughout the relevant portion of the video.  He never shows a lack

of understanding of what is being read to him. When being presented with the consent form, Defendant does not appear "clearly confused" as is stated in his supporting brief (*id.*). Rather, Defendant's engagement in the process of being informed of his rights and being read the consent form is apparent from the questions he asks and the time he takes to read the form himself. Defendant's brief equates appropriate questions with confusion. However, contrary to his current storyline, in the video, each question he asks is answered appropriately and the officers exhibit no pressure for Defendant to sign--their tone and demeanor are calm and respectful. Importantly, Defendant appears satisfied with the answers to his questions and there is no suggestion that he is confused or lacks understanding of what he is agreeing to as the process moves forward. The interactive process shown on the video shows that Defendant "[knew] of his available options before deciding what he [thought] best suit[ed] his particular situation." *Collins v. Brierly*, 492 F.2d at 739.

Based on the Court's review of the video and the Government's information reviewed above concerning the matters which should be taken into account in determining whether Defendant's waiver was voluntary, knowing, and intelligent, i.e., his "background and experience, including prior dealings with the criminal justice system," *Jacobs*, 431 F.3d at 108, the Court concludes that the Government has satisfied its burden of showing that Defendant's waiver was voluntary, knowing, and intelligent. Therefore, the Motion to Suppress Statements of Defendant (Doc. 45) is properly denied.

### III. CONCLUSION

For the foregoing reasons, the Motion to Suppress Statements of Defendant (Doc. 45) will be denied with the result that the Motion will not be considered at the Evidentiary Hearing scheduled for June 21, 2021, and the statements made by Defendant on May 3, 2018, will not be suppressed.  A separate Order will be entered.

Robert D. Mariani
United States District Judge